UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANNA J. SHISLER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-1190-LJM-TAB |
| | ) | |
| THE STATE LOTTERY COMMISSION | ) | |
| OF INDIANA, | ) | |
|     Defendant. | ) | |

### ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiff, Janna J. Shisler ("Shisler"), filed this action under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), against her former employer, the State Lottery Commission of Indiana ("the Lottery"), claiming that the Lottery illegally discriminated against her because of her disability. This matter comes before the Court defendant's, the Lottery, Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for lack of subject matter jurisdiction. The Court has fully considered the parties' arguments and, for the reasons discussed below, **DENIES** the Lottery's motion.

### I. BACKGROUND

Shisler, a quadriplegic, began working for the Lottery in 1992 as the corporate general counsel. Pl.'s Am. Compl., ¶¶ 10-11. Shisler supplied equipment, including an accessible desk and adaptive typing device to facilitate her work. *Id.* ¶ 3. Shisler also received general administrative support from an executive assistant and various employees when necessary. *Id.* ¶¶ 13-15. Shisler

successfully performed her work as general counsel and consistently received excellent performance reveals. *Id.* ¶¶ 16-17.

In 2005, newly-elected Indiana governor Mitch Daniels appointed Esther Q. Schneider ("Schneider") to serve as Executive Director of the Hoosier Lottery. *Id.* ¶ 18. Shisler claims that, under Schneider's direction, the Hoosier Lottery engaged in discriminatory and retaliatory practices that constructively discharged Shisler from employment. *Id.* ¶¶ 18-51. The Lottery claims that such claims are barred by the Lottery's sovereign immunity, pursuant to the Eleventh Amendment.

## II. MOTION TO DISMISS STANDARD

If a district court lacks subject matter jurisdiction over an action, then dismissal is mandated by Rule 12(b)(1). "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998). On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, "'courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Access 4 All, Inc. v. Chi. Grande, Inc.*, No. 06 C 5250, 2007 WL 1438167, at *3 (N.D. Ill. May 10, 2007) (quoting *Sanner v. Bd. of Trade*, 62 F.3d 918, 925 (7th Cir. 1995). The nonmovant bears the burden of establishing jurisdiction by competent proof where the movant provides evidentiary materials in support of its factual averments. *See Mann v. Hanil Bank*, 900 F. Supp. 1077, 1082 (E.D. Wis. 1995); *see also Krizan v. Apfel*, 35 F. Supp. 2d 672, 676 (N.D. Ind. 1999) (explaining that the plaintiff, the nonmovant in the case, must establish competent proof of jurisdiction). "The Seventh Circuit has interpreted 'competent proof' as 'requiring a showing by a preponderance of the evidence, or proof to a reasonable probability, that

standing exists.'" *Access 4 All, Inc.*, 2007 WL 1438167, at *3 ((quoting *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 2003)).

### III. DISCUSSION

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. Amend. XI. Practically speaking, the Eleventh Amendment operates generally as a bar to actions in federal court against states, state agencies, or state officials acting in their official capacities. *See Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics*, 510 F.3d 681,694-95 (7th Cir. 2007); *Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir.1991) ("[A] state agency is the state for purposes of the eleventh amendment."); *Dean v. Ind. Family & Soc. Servs. Admin.*, Cuase No. 3:07-cv-0470 PS, 2007 WL 3119695, at * 1 (N.D. Ind. Oct 23, 2007). Although Congress may validly abrogate the states' sovereign immunity, it has not done so with respect to the ADA. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001); *Erickson* v. *Bd. of Governors of State Colls. & Univs. for Ne. Ill. Univ.*, 207 F.3d 945, 952 (7th Cir. 2000). Accordingly, a state agency may assert its Eleventh Amendment sovereign immunity to any private ADA claim brought against it in federal court. The Lottery attempts to invoke such immunity here. Plaintiff disputes the Lottery's self-characterization as a "state agency," and argues that the Lottery is an independent entity not entitled to assert sovereign immunity.

In determining whether a statutorily-created entity is a "state agency" for immunity purposes, courts consider two factors: "(1) the extent of the entity's financial autonomy from the state and (2)

its general legal status." *DeHarder Inv. Corp. v. Ind. Hous. Fin. Auth.*, 909 F. Supp. 606, 611 (S.D. Ind. 1995). *See also Kashani v. Purdue Univ.*, 813 F.2d 843, 845-47 (7th Cir. 1987). The extent of the entity's financial autonomy from the state is the most important factor. *DeHarder*, 909 F. Supp. at 611; *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994) (recognizing "the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations"). In weighing an entity's degree of financial autonomy, the Court considers five sub-factors: "(1) the extent of state funding; (2) the state's oversight and control of the entity's fiscal affairs; (3) the entity's ability to raise funds; (4) whether the entity is subject to state taxation; and (5) whether a judgment against the entity would result in an increase in its appropriations." *Peirick*, 510 F.3d at 695-96.

This Court recently considered the question of whether the Lottery is a "state agency." Judge Sarah Evans Barker concluded in *Burrus v. State Lottery Com'n of Indiana*, Cause No. 1:05-cv-1263-SEB-JMS (Jan. 7, 2008), that the Lottery was an independent agency and, thus, not entitled to sovereign immunity. The Court determined that "the Lottery has almost complete financial autonomy" and the legal status of a self-sufficient independent entity. *Id.* at * 3. *Cf. DeHarder*, 909 F. Supp. 606 (holding that the Indiana Housing Finance Authority (the "IHFA") was not entitled to invoke sovereign immunity when it had similar operational independence under the Indiana statutory scheme).[1] The Court cannot disagree with Judge Barker's analysis.

---

[1] In *DeHarder*, Judge Barker held that Indiana's "narrow" oversight of the IHFA – specifically, that the entity was accountable to the State Board of Accounts, and was statutorily required to submit annual reports of its activities to the governor and General Assembly – was insufficient to override numerous indicia of financial autonomy, particularly the fact that the IHFA was not required to submit its budget to the legislature for approval. The Court notes here, as Judge Barker did in *DeHarder*, that such "oversight . . . consists of little more than making the authority subject to a uniform system of accounting that is prescribed for use by every public

The Lottery has the financial autonomy of an independent agency. First, the Lottery does not receive state funding. Although the Lottery was originally funded by an $18 million appropriation to cover "initial expenses," that amount was repaid and the Lottery has been self-supporting since its inception.

Second, as this Court noted in *Burrus*, the Lottery "controls its own fiscal affairs with very little interference from the state." *Id*. All money generated by sales of lottery tickets is deposited into an administrative trust fund that is overseen entirely by the Lottery. The Lottery is required by statute to make quarterly transfers to the treasurer of Indiana, namely, $7.5 million for the teachers' retirement fund, $7.5 million for the pension relief fund, and all remaining surplus revenue to the Build Indiana fund that funds state and local capital projects. The Lottery has the discretion to make these transfers on a more frequent basis, if it so chooses (though the number of transfers does not affect the amount required to be transferred). Ind. Code §§ 4-30-16-1 & -3. The Lottery is subject to annual audits by the state and is statutorily required to submit monthly and annual reports to various government agencies, but ultimately maintains absolute control over its own financial operations. Ind. Code § 4-30-19-1-2. The Lottery is not required to submit its budget to the legislature for approval. Ind. Code § 4-30-19-4.2.

---

office, including municipalities and other political subdivisions not entitled to eleventh amendment immunity." 909 F. Supp. at 612. The Court notes further that the Lottery, like the IHFA in the *DeHarder* analysis, undeniably exhibits some attributes of a state agency. For example, its members are appointed by the governor, which may operate as a "check" on its decision-making power, as the Seventh Circuit pointed out in *Kashani*, 813 F.2d at 847; also, the provisions of Indiana's Administrative Orders and Procedures Act ("AOPA") apply to the Lottery's decision-making process. Ind. Code § 4-30-7-1. However, as Judge Barker noted in *DeHarder*, the entity "retains significant financial and operational autonomy[, and has] no recourse to state coffers. It was purposefully organized to have independent legal status under Indiana law." 909 F. Supp. at 613. In this Court's judgment, these considerations override such relatively minor indicia of state control, and bar the Lottery from asserting immunity here.

Third, the Lottery has the ability to raise funds independently of the State of Indiana. The Lottery was created for the purpose of raising funds. Ind. Code §§ 4-30-1-1 & -3. It can sell lottery tickets to generate revenue. The Lottery establishes its own rules regarding the payment of prizes, the frequency of prize drawings, and the sale of tickets (including ticket prices). Ind. Code § 4-30-3-7. It may purchase insurance and own, sell, or lease real and personal property. Ind. Code §§ 4-30-3-10 & -11. It may own copyrights, trademarks, and service marks. Ind. Code § 4-30-3-12. The Lottery may also enter into procurement contracts for goods and services necessary to its operation, as well as contracts with retailers to provide lottery tickets. Ind. Code §§ 4-30-3-16 & -17.

Finally, any judgment assessed against the Lottery would have no impact upon its appropriations from the State of Indiana. A judgment against the Lottery is collectible against the Lottery alone and would not directly implicate the Indiana State Treasury. Ind. Code § 4-30-16-1; Official Opinion No. 91-10, Office of the Atty. Gen. of the State of Ind. at *3-*5, 1991 Ind. AG LEXIS 10.

The Lottery also has the legal autonomy of an independent agency. The Indiana General Assembly explicitly stated that the Lottery should be treated as a "self-supporting" entity "separate from the [S]tate" that "should function as much as possible as an entrepreneurial business enterprise." Ind. Code § 4-30-1-2. Although courts are cautioned against resolving questions of immunity solely "by simple reference to Indiana statutory definitions," *Kashani*, 813 F.2d at 847, it is clear that, for the reasons discussed above, this legislative intention is made manifest in the substance of the Lottery's operations as well. *See also DeHarder*, 909 F. Supp. at 612 (describing a line of cases involving such entities as the Indiana Port Commission, Indiana State Toll-Bridge Commission, and Indiana State Office Building Commission in which courts have construed similar

statutory language to create independent legal entities not considered "arms of the state"). Therefore, it is clear that the Lottery's general legal status as a self-sufficient independent entity supports a conclusion that it is not entitled to invoke sovereign immunity in response to this ADA action.

## IV. CONCLUSION

For the foregoing reasons defendant's, the Indiana State Lottery Commission, Motion to Dismiss is **DENIED**.

IT IS SO ORDERED this 25th day of April, 2008.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Elizabeth Ann Schuerman
DELANEY & DELANEY LLC
lizzie@delaneylaw.net

Daniel C. Emerson
BOSE MCKINNEY & EVANS, LLP
demerson@boselaw.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com